# United States District Court
## for the Northern District of Oklahoma

Case No. 25-cv-554-JDR-SH

PALADIN ADAMAS STORMCROW,

*Plaintiff*,

*versus*

STATE OF OKLAHOMA; GOVERNOR KEVIN STITT, *in his official capacity*; OKLAHOMA DEPARTMENT OF HUMAN SERVICES; OKLAHOMA STATE CHILD WELFARE; CHEROKEE NATION INDIAN CHILD WELFARE SERVICES; JEFFERY CARTMELL, *in his official capacity*; MICHAEL C. WILLIAMS, *in his official capacity*; LAUREN MADDOX, *in her official capacity*; NICHOLAS LELECAS, *in his official capacity*,

*Defendants*.

## OPINION AND ORDER

Plaintiff Paladin Adamas Stormcrow, proceeding *pro se*,[1] filed suit against the state of Oklahoma, Cherokee Nation Indian Child Welfare Services, and other Oklahoma state officials for money damages on the basis that his child was placed into a foster family that refused to raise his child in a manner following his religious convictions. Dkt. 1. Multiple Defendants have filed motions to dismiss for failure to state a claim, namely Cherokee Nation Indian Child Welfare Services [Dkt. 12], Judge Nicholas Lelecas [Dkt. 14], Lauren Maddox [Dkt. 16], Director of Oklahoma Department of Human

---

[1] As Mr. Stormcrow proceeds *pro se*, the Court must construe his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002). But the Court must not "assume the role of [his] advocate" while doing so. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

No. 25-cv-554

Services Jeffrey Cartmell [Dkt. 20], and Director of Oklahoma Child Welfare Services Michael Williams [Dkt. 21]. Mr. Stormcrow has filed responses to Ms. Maddox [Dkt. 22] and to Mr. Williams and Mr. Cartmell [Dkt. 23], which, taking into consideration his *pro se* status, the Court interprets as his collective response to all Defendants' motions to dismiss.

The Court finds that it lacks jurisdiction under the Eleventh Amendment to hear Mr. Stormcrow's claims against the state agencies and their employees and grants their motions to dismiss [Dkts. 14, 16, 20, 21]. Additionally, the Court finds that the doctrine of tribal sovereign immunity precludes suit against an agency of the Cherokee Nation and grants Cherokee Nation Indian Child Welfare Services' motion to dismiss [Dkt. 12]. The Court further finds that it lacks jurisdiction to hear Mr. Stormcrow's claims against the State of Oklahoma, Governor Stitt, or any Oklahoma state agencies, and dismisses all of Mr. Stormcrow's remaining claims.

I

Mr. Stormcrow alleges that his unnamed sixteen-month-old son was placed in Oklahoma Department of Human Services (DHS) and Cherokee Nation Indian Child Welfare Services (CNCWS) custody. Dkt. 1 at 3. He further alleges that the child was a "Natural Born Nazarite" whose religious duties include not cutting his hair, not consuming grape products, and not touching a dead body or entering a cemetery. *Id.* Mr. Stormcrow told Ms. Maddox, a DHS employee with responsibility for Mr. Stormcrow's son, about his family's religious practices, and she told him that foster families are not permitted to cut a child's hair without parental consent. *Id.*

Mr. Stormcrow then alleges that Ms. Maddox searched for a home to place his child and selected a family with which Mr. Stormcrow had longstanding tensions. *Id.* Mr. Stormcrow claims that he informed Ms. Maddox of these tensions, but she still selected that family to foster Mr. Stormcrow's child. *Id.* Mr. Stormcrow states that the family was aware of his

No. 25-cv-554

religious convictions and knew of the religious requirements placed on a "Natural Born Nazarite." *Id.*

Mr. Stormcrow then alleges that his child was ordered out of the foster home by Judge Lelecas and CNCWS on October 6, 2025. *Id.* On October 10, Mr. Stormcrow was granted visitation with his child and saw that the child's hair had been cut in violation of Mr. Stormcrow's religious beliefs. *Id.* On October 12, Mr. Stormcrow's child was removed from the home. *Id.*

Mr. Stormcrow sues the State of Oklahoma for failing to properly vet DHS employees, Governor Kevin Stitt for failing to appoint competent DHS leadership, DHS itself for incompetence, Oklahoma Child Welfare for incompetence, CNCWS for failing to ensure compliance with the order to remove the child from the foster home on October 6, Mr. Cartmell for incompetence, Mr. Williams for incompetence, and Judge Lelecas for "impotence of office and incompetence" for failure to ensure Mr. Stormcrow's child's removal from the home after his order to do so on October 6. *Id.*

II

The Court begins with Ms. Maddox's motion to dismiss [Dkt. 16], because that is the motion to which Mr. Stormcrow directed his first response [Dkt. 22].[2] Finding that the Eleventh Amendment bars adjudication in federal court of Mr. Stormcrow's money damages claims against all Oklahoma state officials and agencies, the Court then considers CNCWS's motion to dismiss.

A

Ms. Maddox moves to dismiss under Rule 12(b)(1), arguing that the Eleventh Amendment precludes suing her in her official capacity in federal court. Dkt. 16. Under the Supreme Court's precedent in *Will v. Michigan*

---

[2] Mr. Stormcrow's response to Mr. Cartmell's and Mr. Williams's motions is substantially identical to his response to Ms. Maddox, save for the addition of three paragraphs restating his specific claims against Mr. Cartmell and Mr. Williams. *Compare* Dkt. 22 *with* Dkt. 23.

3

*Dep't of State Police*, 491 U.S. 58, 66 (1989), state officials who are sued in their official capacities are not liable for money damages under 42 U.S.C. § 1983 "unless the State has waived its immunity." And as Ms. Maddox has pointed out, Oklahoma has never waived its immunity, and the Tenth Circuit has previously held that the Eleventh Amendment bars cases for money damages in federal court against DHS and other Oklahoma state entities. *McKinney v. State of Okl., Dep't of Hum. Servs., Shawnee OK*, 925 F.2d 363, 365 (10th Cir. 1991); *see also Legates v. Oklahoma ex rel. Rogers Cnty. Dep't of Hum. Servs.*, No. 09-cv-29-FHM, 2010 WL 4941437, at *4 (N.D. Okla. Nov. 30, 2010) (applying *McKinney* and finding a lack of jurisdiction to hear money damages claims against Oklahoma agencies).

Mr. Stormcrow argues that the Eleventh Amendment does not permit Oklahoma or Ms. Maddox "authority to violate the civil rights" of United States citizens "with impunity." Dkt. 22 at 1. And he is correct that it does not vouchsafe constitutional violations. But the Eleventh Amendment expressly prohibits a federal court from hearing suits levied by a citizen of a state against his own state, subject to abrogation or waiver. *Pettigrew v. Oklahoma ex rel. Oklahoma Dep't of Pub. Safety*, 722 F.3d 1209, 1212-13 (10th Cir. 2013).

Mr. Stormcrow's claims against Ms. Maddox are for alleged actions taken in her official capacity. His claims, therefore, are against an arm of the state, and the Court finds that it does not have jurisdiction and grants the motion to dismiss. Mr. Stormcrow has also sued the State of Oklahoma, Governor Stitt, Mr. Cartmell, Mr. Williams, and Judge Lelecas[3] in their official capacities, and these claims must also be dismissed for lack of jurisdiction. Dkt. 1.

---

[3] The doctrine of judicial immunity provides a separate basis for Judge Lelecas' immunity from suit in this matter. *Padilla v. Enzor*, 279 F. App'x 606, 612 (10th Cir. 2008) (holding that a state judge "enjoys absolute immunity from claims for money damages stemming from his judicial actions").

No. 25-cv-554

B

The Eleventh Amendment only applies to suits against states, state agencies, and state officials, and Mr. Stormcrow has sued CNCWS, which does not have Eleventh Amendment immunity. Dkt. 1. But CNCWS asserts that the doctrine of tribal sovereign immunity precludes suit against an arm of a tribal government. Dkt. 12 at 2. Tribal sovereign immunity is settled law, and "an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). Much as with states, tribal agencies and officials are protected by the tribe's sovereign immunity. *Ford v. Light Horse Police Dep't*, No. CIV-23-86-JFH-GLJ, 2023 WL 4229029, at *3 (E.D. Okla. June 9, 2023), *report and recommendation adopted*, No. 23-cv-86-JFH-GLJ, 2023 WL 4205762 (E.D. Okla. June 27, 2023) (holding "because the LPD, as a tribal police force, is an agency of the Chickasaw Nation, it is entitled to the same immunity afforded the Tribe.").

Although Congress has the authority to limit tribal sovereign immunity, it has not done so under 42 U.S.C. § 1983. *Chavez v. Navajo Nation Tribal Courts*, 465 F. App'x 813, at *1 (10th Cir. 2012) (affirming dismissal of a § 1983 action against Navajo tribal officials). The Cherokee Nation's sovereign immunity thus bars any suit against CNCWS for money damages, and the Court must dismiss this claim for lack of jurisdiction.

III

The Defendants' motions to dismiss [Dkts. 12, 14, 16, 20, 21] are granted. Additionally, because the Court lacks jurisdiction to adjudicate Mr. Stormcrow's claims for the reasons discussed in section II–A, *supra*, the Court dismisses his claims against the State of Oklahoma, the Oklahoma Department of Human Services, Oklahoma Child Welfare Services, and Governor Stitt.

No. 25-cv-554

DATED this 17th day of February 2026.

_____
JOHN D. RUSSELL
*United States District Judge*